The next case for argument is 24-1731, Lone Star v. Zebra Technologies. Please proceed. May I please the court? Can I start you with a housekeeping question, and I'll ask Mr. Goldenberg to confirm whatever it is you say or not. Both, I think you rely on three related cases that are pending in the statement of related cases, and I think there are two district court cases in Texas and one moved to North Carolina or something. Are you familiar with what I'm talking about? Yes, you are. Are all of the patents, because we've got so many patents involved in this IPR, is everything we have here take care of all of the claims and all involved in those district court cases? I believe so. There were three cases that were filed, one against Zebra, one against Honeywell, and one against Bluebird. In all three cases, the same four patents were being asserted, and certainly at least at this stage where the case was, the same claims for all four patents were being asserted. Now, the IPRs occurred in the Zebra case and occurred fairly early within the litigation such that it may be that discovery later on would show that a Honeywell product might be different from a Bluebird product, which might affect claims that would be asserted. But for our purposes, all of the claims of all of the four patents were addressed in the IPRs. And so all of the claims that would be asserted among the three patents are at issue and would be resolved in this proceeding. Thank you. Thank you. Please proceed. Sorry about that. So may it please the Court, my name is Stephen Williams, and I represent Lone Star with SCM Systems. The Board erred in construing the term coherent within the term multi-scan coherent signal processing to mean in phase rather than meaning to coherently process signals from multiple scans. The Board then compounded its error by concluding that Anderson taught multi-scan coherent signal processing. Now, the term multi-scan coherent signal processing, and this is a term that appears in all four of the patents. The term multi-scan coherent signal processing means to coherently process signals from multiple scans. That is the proper construction. That is, in fact, the construction that Zebra advanced in its original petitions in all four of the IPRs. For example, you can see that in the appendix at 498. Further, this construction is consistent with the intrinsic evidence from both the plain reading of the claims themselves as well as from the specification of the patents at issue. And as we say, there are four patents. The four patents are all related. They all share essentially the same specification. And you made these claim construction arguments to the Board? Yes, I believe we did. Can you identify where in the appendix? So we – yes. At least I think there's a suggestion by your friend on the other side that there are only kind of two conclusory sentences. So in the appendix, for example, in the appendix at 540 through 541, this was the patent owner's preliminary response. We discussed multi-signal, multi-path signal error correction, which was disclosed in Anderson, that that was different from multi-scan coherent signal processing. We also discussed that at length through the declaration of Dr. Omid Kia, and that his declaration appears in appendix 542 through 543. And in fact, there were three or four paragraphs from Dr. Kia's declaration that go into detail about multi-scan coherent signal processing and what that means and how that operates. So there was evidence that we presented and argued before the Board. Finally, the record is clear that Anderson does not teach coherently processing signals from multiple scans. What Anderson teaches is multi-path error correction. In other words, Anderson teaches selectively ignoring and rejecting certain signals in order to arrive at a single signal. The Lone Star patents teach coherently processing multiple signals in order to compare the multiple signals to arrive at the correct set of data. So let's put this in context. We're talking about RFID signals, and we're talking about taking a scan to receive a signal from an RFID tag in order to discern the presence of an RFID object and its location. In difficult circumstances and difficult environments, it is common that one would make a scan, the signal that would come back would not have a complete set of data in order to identify and locate the object. So under the prior art, you would then discard that signal, make another scan, get that signal. If it did not have complete data, you would discard that signal and scan again. You would do this over and over. What the Lone Star patents disclosed is multi-scan coherent signal processing. In other words, you take multiple scans of an object, and each one of the signals that come back might have incomplete sets of data, but you coherently process those signals. In other words, you compare those signals, and you look at the data packets that are being returned by those signals to combine to come up with a coherent set of data. I'm a little confused. As I understood, the board's claim construction means that if the multi-scan modifies the signals being processed, then coherent should do the same and not modify the type of processing. So that's my understanding of the board's claim construction, and how is what you're telling us now, does that differ from what the board's construction was? What the board construed was that coherent refers to the signal, that coherent means an in-phase signal. Right. What the proper construction of the patents is the nature of the signal is irrelevant, whether it's an in-phase signal, an out-of-phase signal, or otherwise. That's irrelevant. What is relevant is the processing, the signal processing. So multi-scan and coherent are adjectives that modify the same noun, signal processing. And that is the position that Zebra took in its original petition, but that is not the position it took in its reply. It reversed its position and took a new position in its reply to say that coherent only modifies the word signal to mean in-phase signals. So the board's construction is an error because, first of all, it relies upon a new theory that was advanced in Zebra's reply and not the theory that was advanced in Zebra's original petition. Did you raise that objection to the board? We did not specifically stand up and say, Your Honor, we object, but we did address the argument that was being raised by Zebra and we did address why, subsequently, it was incorrect. So that's the opposite of objecting to their putting it in. Well, so we got a sort of reply, right? I'm sorry? We got a sort of reply to address this, right? Yes. So the procedural stuff is not in the case, then. If you didn't object to them raising it and you got a chance to respond to the argument, then there's no error there. Except that there is because, under the law, the board can abuse its discretion if it relies upon something that is newly raised. You weren't allowed to rely on it as long as it gave you a chance to respond. However, even though we were able to argue, as the board... I would suggest you not waste your time on this point. But regardless of the propriety of raising a new issue, the in-phase construction itself is incorrect. It is incorrect with respect to both... I still don't understand why this makes any difference to the board's ultimate conclusion that Anderson chose this element. Because what the board concluded was that based on the construction, that coherent means in-phase signals, Anderson teaches that construction. But that construction is incorrect. What the claim teaches is coherent signal processing, the coherent processing of these signals. And under that construction, Anderson does not teach coherently processing the signals. That's why the claim construction is incorrect and the reliance on that claim construction to find that Anderson applies was error. The... As I said, the construction itself is incorrect because it is inconsistent with the term as it's used both in claims as well as in specification. Claims say multi-scan comma coherent signal processing. Multi-scan and coherent are adjectives that are modifying signal processing. This is how it is used in the specification. Specification discusses multi-scan coherent signal processing as coordinating signal processing. So the original construction that Zebra set out in its petition is the correct construction, but that is different and that is contrary to the construction that they changed to in their reply. Further... Particularly through the declaration of Dr. Kia, and again this, for example, is found in the appendix at 1394, Dr. Kia gave very detailed explanation about the difference between what Anderson teaches in terms of multi-path error correction versus what is disclosed in the loans for patents, multi-scan coherent processing. The difference is in multi-path error correction, Anderson talks about having a situation such as a warehouse where a signal can be bounced upon or reflected against various obstacles. And so the receiver ends up receiving different versions of that signal. It's the same signal, but it's being reflected and bounced off of different objects so that it arrives at different times to the receiver. And because of it being bounced and reflected, some of those versions are less complete than others. So in multi-path error correction, you eliminate the erroneous versions in order to focus just on a single version of the signal. That's what Anderson teaches. That is multi-path error correction. As Dr. Kia explains in his declaration, that is fundamentally different from multi-scan coherent signal processing where you are collecting multiple signals from scans of the object and you are comparing those signals in order to get a complete data set in order to locate and identify the tagged object. The clock is running. So do you want to move on briefly to other issues? Yes. So the board erred in a number of areas. Another area in which they erred was in the construction of close unobstructed proximity. Briefly, the error there is that the board focused on that term as referring to blocking the electronic signal. That's not what close unobstructed proximity refers to. What is very clear from the claims as well as from the prosecution history is that close unobstructed proximity is talking about the physical location of the object. In fact, if you look at claim 5 of the 293 patent... What about figure 4? I'm sorry? What about figure 4? So figure 4 is very interesting. It's a very good question. Figure 4 is a picture of a surgical operating room. Within that figure are a number of different embodiments. One embodiment is a body scan. Another embodiment, a separate embodiment, is scanning the back table for instruments. It is that embodiment that supports close unobstructed proximity. First of all, if you look at the claim language, for example, claim 5 in the 293, it says a first object and second object in close unobstructed proximity. It's talking about the physical location of the objects. When you look at the back table scan embodiment that is shown in figure 4, that's what you are seeing. You're seeing an embodiment where surgical instruments are laid out on a table. They are close to each other. They are not obstructed from each other by any kind of barrier. So that would be the correct construction, and that is not what's taught by Garber because Garber teaches placing RFID tags inside books in a library. So those RFID tags are physically separated, physically obstructed from each other. They are not unobstructed as is set out in the table scan embodiment shown in figure 4 and set out in the claims. Okay, we're out of time, but we still have some rebuttal time. Let's hear from the other side. Thank you. Second one. Thank you, Your Honor. May it please the Court. Lone Start takes a scattershot approach to this appeal, raising five unpersuasive arguments. I only heard argument today about the two claim construction arguments, so I'll focus my presentation on those two, but if the Court has any questions about the other arguments, happy to answer those as well. I'm going to start with the multi-scan coherent signal processing. As Judge Hughes recognized, Lone Start forfeited its procedural challenge that Zebra raised its claim construction of multi-scan coherent signal processing too late because it never raised that procedural issue with the Board. I agree with that, but what about something he said I think at least four times, which is you've changed your claim construction, not that you're permitted to do that, but is he correct in his observations about that? He's correct that the words in phase were added in reply. However, the coherent is really a red herring here because the argument below centered on the meaning of multi-scan. Zebra argued that multi-scan could be the same signal that was received in different ways and it could be only from one signal, and Lone Start argued that, no, you need multi-scan means multiple scans, and you're going to get multiple signals from that scan. The Board sided with Lone Start on this issue. They won the claim construction issue, and that's what we were discussing in our reply. We added the words in phase about coherent just to provide more color, more explanation of what these words might mean, but the Board didn't focus on that. It's a true red herring here. The issue was what was the meaning of multi-scan. And that's what, on the substantial evidence portion of this, the reliance was on Anderson and multi-scan. Exactly. So the whole discussion of coherent is irrelevant. It's immaterial to the outcome of this case. The question is, does Anderson have multi-scan? And the Board said, Zebra, we don't agree with your view of claim construction. We agree with Lone Start, but we agree with your alternative argument, which is even under Lone Start's construction, that Anderson discloses assistive for tracking inventory, having RFID components, and this is the quote from Anderson that the Board relied on from Appendix Page 1639 and 1643, RFID receivers are continually receiving the RFID beacon signals. Continually receiving signals, that's from multiple scans. That was the finding, and that was the basis of the argument below, and that really wasn't directly challenged because they've come at it from a coherent standpoint when that has nothing to do with the Board's findings. So they haven't explained why the claim construction issue, which is their main issue, even matters to the outcome. The argument I heard was that Anderson was getting rid of signals that were errors because they bounced off and were coming later, and so it was trying to filter out those bad signals and just get to the true signals, and they view that as just one simple scan in the multiple. But your argument is, I take it, that that's just not the proper way to view Anderson, and the Board found otherwise without support by substantial evidence. Exactly, Your Honor, and I heard a reference, for example, to Do you have any – I still don't understand why coherent matters here either. Whether it's in phase or not, how does that matter to how you view the Anderson system as having multiple scans versus one scan? Because I think I've heard from your opposing counsel that that's why Anderson didn't disclose this He views it that there was only one scan in Anderson, but the Board found otherwise, and I don't see how the construction of coherent makes any difference to that finding. It doesn't, and the Board didn't rely on it. So we could ignore – that's why it's a red herring. The construction doesn't matter. What matters is the construction of multi-scan, which Lone Star, again, prevailed on that and hasn't appealed that because it won it. And then what matters is the Board then looked at the testimony from the experts and the disclosure in Anderson. It relied on that citation that I referenced before from Appendix Page 1639. It also credited the testimony of our expert, Dr. Ciarone. His testimony is on Appendix Page 1791 and 1794 through 95, and it was credited on Appendix Pages 39 and 40. The Board did not credit the testimony of Dr. Kia, which was referenced today. So you've got a decision by the Board to credit testimony of one expert over another, and they can't show that that's not substantial evidence, so they can't prevail on this argument. So turning to the other claim construction argument that was addressed, which is close, unobstructed proximity, ZEBRA proposed and the Board adopted ZEBRA's construction, which was that there's no structure located between the objects that blocks the signals from an object to the extent that the object cannot be detected by the antenna or the interrogation system. The Board considered the evidence, including the specification, and it looked at Figure 4, which I heard Judge Prost reference. And that Figure 4 shows multiple different ways that this invention can be used, including scanning things that are on a table, as well as scanning things that are in a patient's body. And it specifically references the fact that after surgery is completed, you would run the scan to make sure, before you wheel the patient out of the operating room, that you haven't left any items that you didn't intend to leave inside the patient. Obviously, at that point, there's going to be something other than air between the object and Like tissues and organs, right? Yeah, tissues, organs, blood, skin, perhaps some medical equipment that's been placed there. There's going to be something there. And that's an alternative embodiment to the table scan. And there's no indication that these claims were intended to only cover the table scan. So they're reading out a preferred embodiment. The Board looked at Figure 4, but it went further than that. It also looked at Dr. Ferroni's testimony, and it credited that over Dr. Kinney, which was Lone Star's expert. And they said Lone Star's expert's testimony was inconsistent with Figure 4. So the Board, considering all of the evidence, came up with its claim construction, and they just haven't shown error in that determination either. I saw argument in the briefs that our construction read out a preferred embodiment. I don't really understand that argument because, just to be clear, our construction covers both embodiments, the table scan and the patient scan. It's their construction that reads out the preferred embodiment. And, of course, that is a disfavored way to construe terms by this Court. So unless the Court has any questions about those claim constructions or the other issues, we're happy to rely on our briefing. Thank you. Thank you. Oh, can I ask, I'm sorry, one more quick question, the housekeeping question I started with. Yours is only one of the three cases they cited, but I presume that everything here raised in the IPR takes care of everything that's been asserted in that district court litigation. Yes, Your Honor. And, in fact, Judge Albright actually dismissed all three cases in view of the IPR outcome. So there's no pending claims because that's just further proof that this IPR is determinative. Both of those cases. Thank you. Okay. Will we still have two minutes for your final? Briefly, Your Honor, the term coherent is important because the claim term, multi-scan coherent signal processing, is talking about how to process signals. It is talking about coherently processing the signals. It's not talking about a particular type of signal, an in-phase or an out-of-phase or any other type of signal. It's talking about how to process coherently those signals. And, in fact, counsel intimates that the term... Why does Anderson not show it even under your definition? Because Anderson, what Anderson teaches is you take a signal and you discard signals. You're not comparing the signals and collecting data from all of the signals in order to coherently process them. Anderson is selectively ignoring and rejecting signals in order to arrive at one signal. And then that signal is what's processed. That's what Anderson teaches. That's what is discussed in Dr. Kia's declaration. What Dr. Kia goes on to point out is that multi-scan coherent processing is the combining of the signals in order to collect the data from each of the signals to get a stream of data that allows you to locate and position the object in question. But I heard argument that the board looked at this under their alternative argument and said that Anderson is continuously transmitting signals so the responder is processing those continuous multiple signals. Now, while there are beacons that are being sent, first of all, those are multiple signals from multiple objects. Those are not multiple signals from the same object. But, moreover, Anderson is not comparing those signals to each other. Anderson is taking a signal that comes in and is ignoring or rejecting other versions of that signal. Now, he may be doing that with several different signals coming from different beacons. I'm sorry, how does somebody take a set of incoming signals and identify some as worth discarding without comparing to the ones that are going to be kept? So, again, keeping in mind that we're talking about multi-path error, so this is a signal that goes out and because it gets reflected off of... Right, so some of them are coming in off phase. Right, so the first signal that comes in is assumed to be the correct signal and the later versions are then rejected. That's what is taught in Anderson. That is multi-path error correction. That is not coherent signal processing, which is combining and coordinating the signals in order to process them in order to discern the presence and location of the RFID object. It's a fundamental difference between multi-path error correction, which is Anderson, and coherent signal processing. And, in fact, the board spent about two pages in its final written decision discussing coherent. So to suggest that coherent was not important or was not at issue is simply wrong. They discussed it at length in their final written decision and said, based on Dr. Cerrone's second declaration, where he changes the definition of coherency, that is what they base their conclusion that Anderson teaches coherent, multi-scan coherent signal processing. But that is not the correct construction of coherent signal processing. Okay, we're out of time. We thank you. Thank you. We thank both sides. The case is submitted.